UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GUILLERMO GONZALES, individually and on behalf
of all others similarly situated,

                         Plaintiff,

                  -against-

SPICE PLACE, INC., SPICE AVE., INC.,
BANGKOK PALACE II, INC., SPICE CITY, INC.,
SPICE WEST, INC., KITLEN MANAGEMENT, INC.,
KITTIGRON LIRTPANARUK, and
YONGYUT LIMLEARTVATE

                        Defendants.
-----------------------------------------------------------------X

**AMENDED COMPLAINT**

**FLSA COLLECTIVE ACTION**

**Rule 23 Class Action**

**Plaintiff Requests Trial by Jury**

**ECF case**

**Index no. 08-civ-3887**

        Plaintiff **GUILLERMO GONZALES,** ("Gonzales") alleges that:

### FIRST CLAIM
**(Unpaid wages in violation of the Fair Labor Standards Act)**

1.     The jurisdiction of this court is conferred because of the presence of:

    (a)     federal questions pursuant to 28 U.S.C. §§ 1331, 1337 and 1343 arising from claims based upon the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq.*; and

    (b)     a common nucleus of operative fact such that a single case or controversy is present for supplemental jurisdiction, pursuant to 28 U.S.C. §1367.

2.     The venue of this action is properly placed in the Southern District of New York pursuant to 28 U.S.C. §1391 (b) and (c) because all or a substantial part of the events or omissions giving rise to plaintiff's claims occurred in this district, defendants reside in this district, and plaintiff was employed by defendants in this district.

3. Upon information and belief, the six defendant corporations—Spice Palace, Inc., Spice Ave., Inc., Bangkok Palace II, Inc., Spice City, Inc., Spice West, Inc., and Kitlen Management, Inc. (the "Spice group")—are domestic corporations organized and existing under the laws of the State of New York.

4. Upon information and belief, the Spice group corporations act in partnership with one another in the operation and management of a chain of Thai restaurants in the State of New York.

**5.** Upon information and belief, the Spice group is owned and operated by the individual defendants Kittigron Lirtpanaruk and Yongyut Limleartvate, who are sued individually and in their capacity as owners, officers or agents of the Spice group.

6. Gonzales brings this claim as a collective action and class action on behalf of himself and all wait staff and "bussers" employed by the Spice group who were not compensated for wages earned in violation of the FLSA and New York Labor Law (the "class") during the period from April 30, 2002 to the date of this complaint (the "relevant period.")

7. This claim is properly brought and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b) because Gonzales is similarly situated to other potential members of the class as they were all "wait staff" and "bussers" employed by the Spice group who suffered from the same common policies or plans of the Spice group which denied them the compensation to which they are entitled under the FLSA.

**Gonzales's employment at the Spice group**

8. Gonzales was employed at the Spice group's restaurants from approximately November 2001 to December 2007. (Gonzales's "period of employment.")

9. For approximately the first three years of his period of employment, Gonzales was employed as a busser at the Spice group's restaurant, located at 60 University Place, New York, New York (the "University Place location.")

10. During the remainder of his period of employment, Gonzales was employed as a waiter at the Spice group's restaurant, located at 75 Second Avenue, New York, New York (the "75 Second Avenue location.")

11. At the University Place location, Gonzales worked from approximately 10:30 a.m. to 12:30 or 1:00 a.m. from Monday through Saturday; and from approximately 10:30 a.m. to 4:00 p.m. on Sundays—for a total of approximately 90 hours per week.

12. At the 75 Second Avenue location, Gonzales worked from approximately 11:00 a.m. to 12:30 or 1:00 a.m. six days per week, with Sundays off—for a total of approximately 83 hours per week.

13. Gonzales was never allowed to take meal breaks during his period of employment.

14. In addition to his duties as a busser and waiter, the Spice group required Gonzales to perform other tasks—including stocking items in the storage room, cleaning the restaurant, setting up the seating area, and carrying supplies from the delivery trucks to the storage area.

15. From the beginning of his period of employment until approximately 2004, Gonzales received no salary or other compensation from the Spice group, and received compensation only in the form of tips from restaurant patrons.

16. The management of the Spice group pooled together the tips received by all waiters at the restaurant (the "tip pool") and distributed portions to bussers and waiters at the end of each day.

17. Gonzales received approximately $40 from the tip pool each day, regardless of the amount of tips actually left by patrons.

18. Upon information and belief, all the other bussers and waiters also received approximately $40 from the tip pool each day during the relevant period, regardless of the amount of tips actually left by patrons.

19. Gonzales repeatedly complained to managers at the Spice group, including Gin (the general manager) and Lenny (a co-owner), that $40 per day was not sufficient to compensate him for the hours he worked, but they told Gonzales he could leave if he didn't like it.

20. Gonzales arrival and departure times were recorded on a punch card from 2001 into 2004.

21. In 2004, the Spice group began using a computer system to record arrival and departure times (the "computer time system")—by which waiters and bussers would record their arrival and departure times by swiping a card or entering an identification number into a computer.

22. After it switched to the computer time system, the Spice group began paying Gonzales a weekly salary of approximately $160 by check, in addition to the approximately $40 he received per day from the tip pool.

23. However, the management of the Spice group required Gonzales to cash his weekly paycheck and return the resulting cash to the restaurant, and withheld his tips until he returned the cash from cashing his check.

24. Gonzales was required to "punch out" using the punch card or computer time system hours before he actually stopped working each day, so that his time records would incorrectly indicate that he worked no more than 40 hours per week.

25. Gin, the general manager, called the manager at Gonzales's location and instructed the manager to have all waiters and bussers punch out hours before they actually stopped working.

26. After the Spice group switched to the computer time system, the Spice group presented Gonzales with a blank W-2 federal tax form each year and required Gonzales to fill out his name and address and return the form to the Spice group.

27. In 2005, the Spice group received a tax refund check for approximately $8,000 in Gonzales's name.

28. A manager of the Spice group instructed Gonzales to deposit the tax refund check in his bank account and return the amount in cash to the Spice group manager.

29. Gonzales informed the Spice group manager that Gonzales did not have a bank account, so the Spice group manager required Gonzales to endorse the check and return it to the Spice group—and Gonzales, following these instructions, so returned the check.

30. On occasions when Gonzales was late for work, the Spice group sent him a bill for $5 for every 15 minutes he was late, and withheld the sum from his daily tips.

31. Gonzales was required to purchase uniform pants and shirts with his own money for use in his employment by the Spice group.

32. There were no minimum wage posters at the University Place or 75 Second Avenue locations until 2006.

33. At the University Place location, there were at least eight other bussers and wait staff who were subject to the same Spice group compensation policies as Gonzales during his period of employment.

34. At the 75 Second Avenue location, there were at least five other bussers and wait staff who were subject to the same compensation policies as Gonzales during his period of employment.

35. Upon information and belief, all bussers and wait staff at all the Spice group's restaurants were subject to the same compensation policies as Gonzales throughout the relevant period.

36. Throughout the relevant period, the Spice Group failed to keep accurate records of the hours worked by employees—including records of arrival and departure times and the total number of hours worked each day and each week.

**The Spice group's violation of the FLSA**

37. As is set forth above, the Spice group violated the Fair Labor Standards Act 29 U.S.C. §§ 201 *et. seq*., by failing to pay plaintiff the minimum hourly rate under Federal law, and by failing to pay plaintiff overtime compensation in the amount of on and one-half times the regular rate for each hour worked in excess of forty hours per week.

38. During the relevant period, the minimum hourly wages required under New York law were as follows:

    (a)    $5.15 per hour from October 2001 to December 31, 2004, ("relevant period A"), and

    (b)    $6.00 per hour from January 1, 2005 to December 31, 2005, ("relevant period B"), and

    (c)    $6.75 per hour from January 1, 2006 to December 31, 2006 ("relevant period C"), and

    (d)    $7.15 per hour after January 1, 2007 ("relevant period D").

39. The conduct of defendants as alleged herein was willful and deliberate.

40. By reason of the foregoing, Gonzales is entitled to:

    (a)    compensatory damages for unpaid wages in the amount of approximately $203,338.65, calculated as follows:

        i)    $33,784 for unpaid non-overtime hours worked during relevant period A (164 weeks times 40 hours per week times $5.15), plus

        ii)    $12,480 for unpaid non-overtime hours worked during relevant period B (52 weeks times 40 hours per week times $6.00), plus

        iii)    $14,040 for unpaid non-overtime hours worked during relevant period C (52 weeks times 40 hours per week times $6.75), plus

        iv)    $14,300 for unpaid non-overtime hours worked during relevant period D (50 weeks times 40 hours per week times $7.15), plus

        v)    $62,912.40 for unpaid overtime hours worked during relevant period A ([156 weeks times 50 overtime hours per week times 1.5 times $5.15] plus [8 weeks times 43 overtime hours per week times 1.5 times $5.15]), plus

        vi)    $20,124 for unpaid overtime hours worked during relevant period B (52 weeks times 43 overtime hours per week times 1.5 times $6.00), plus

   vii) $22,639.50 for unpaid overtime hours worked during relevant period C (52 weeks times 43 overtime hours per week times 1.5 times $6.75), plus

   viii) $23,058.75 for unpaid overtime hours worked during relevant period D (50 weeks times 43 overtime hours per week times 1.5 times $7.15).

 (b) liquidated damages in the amount of approximately $203,338.65 pursuant to the FLSA, 29 U.S.C. § 216(b); and

 (c) the costs of this action, including fees and costs of experts, together with interest and attorney's fees; and

 (d) such other and further relief as this Court deems just and equitable.

41. By reason of the foregoing, each class member is entitled to:

 (a) compensatory damages for unpaid wages, including minimum wages and overtime premiums; and

 (b) liquidated damages pursuant to the FLSA, 29 U.S.C. § 216(b); and

 (c) the costs of this action, including fees and costs of experts, together with interest and attorney's fees; and

 (d) such other and further relief as this Court deems just and equitable.

## SECOND CLAIM
### (Unpaid wages in violation of New York Labor Law)

42. Gonzales and the class repeat and re-allege each and every allegation of paragraphs 1 through 39.

43. The Spice group violated N.Y. Labor Law §§ 2, 190 and 650, *et seq.* and 12 N.Y.C.R.R. §142-2.2, by failing to pay plaintiff the minimum hourly rate under New York State law, and by failing to pay plaintiff overtime compensation in the amount of one and one-half times the regular rate for each hour worked in excess of forty hours per week.

44. Gonzales meets the prerequisites to bring this action on behalf of the class under Rule 23 because:

   a) Numerosity: upon information and belief, the class is so numerous that joinder of all members as individual plaintiffs is impracticable. While the exact number of class members is unknown and can only be obtained through discovery, plaintiff believes at least 60 other bussers and wait staff were affected by the Spice group's unlawful compensation policies, and

   b) Commonality: there are questions of law and fact common to the class, including whether the Spice group violated the FLSA and New York Labor Law, and

   c) Typicality: Gonzales's claims are typical of the class because Gonzales and other members of the class were each underpaid as a result of the Spice group's unlawful compensation policies, and

   d) Adequacy: Gonzales will fairly and adequately protect the interests of the class, he has no interests that are antagonistic to, or in conflict with, the interests of the class as a whole, and has engaged competent counsel to ensure protection of the interests of the class as a whole.

45. This action is suited for class certification under Rule 23 because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the Spice group, questions of law and fact common to members of the

9

class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

46. By reason of the foregoing, Gonzales and the class are entitled to the relief set forth in paragraphs 40 (a), (c), and (d); and 41 (a), (c), and (d).

## THIRD CLAIM
### (Unpaid "spread of hour" wages under New York Labor Law)

47. Gonzales and the class repeat and re-allege each and every allegation of paragraphs 1 through 39 and 43 through 45.

48. Pursuant to N.Y Labor Law §190, *et seq*. and 12 N.Y.C.R.R. §142-2.4 and 142-2.18, Gonzales and each class member are each entitled to one hour's pay at the basic minimum hourly wage rate (in addition to the minimum and overtime wages they are entitled to under N.Y. Labor Law §650, *et seq*. and 12 N.Y.C.R.R. §142-2.2) for every day they worked in which the "spread of hours" for that day exceeded ten hours.

49. 12 N.Y.C.R.R. §142-2.18 defines "spread of hours" as the interval between the beginning and the end of an employee's work day.

50. The Spice group did not pay Gonzales and other class members for "spread of hours" wages in addition to their weekly hourly wages.

51. As is set forth above, The Spice group violated N.Y. Labor Law §190, *et seq*. and 12 N.Y.C.R.R. §142-2.4 and 142-2.18, by denying Gonzales and other class members one hour's pay at the basic minimum hourly wage rate (in addition to the minimum and overtime wages they were entitled to under N.Y. Labor Law §650, *et seq*. and 12 N.Y.C.R.R. §142-2.2) for every day in which the spread of hours exceeded ten hours.

52. By reason of the foregoing, Gonzales is entitled to:

    (a)    compensatory damages for unpaid spread of hours wages in the amount of approximately $11,190.60, calculated as follows:

        i)    $5,067.60 for unpaid spread of hours wages during relevant period A (164 weeks times six days per week times $5.15), plus

        ii)    $1,872 for unpaid spread of hours wages during relevant period B (52 weeks times six days per week times $6.00), plus

        iii)    $2,106 for unpaid spread of hours wages during relevant period C (52 weeks times six days per week times $6.75), plus

        iv)    $2,154 for unpaid spread of hours wages during relevant period D (50 weeks times six days per week times $7.15), plus

    (b)    the costs of this action, including fees and costs of experts, together with interest and attorney's fees; and

    (c)    such other and further relief as this Court deems just and equitable.

53.    By reason of the foregoing, each class member is entitled to:

    (a)    compensatory damages of one-hour's wage at the minimum wage for each day when the spread of hours for the day exceeded ten hours; and

    (b)    the costs of this action, including fees and costs of experts, together with interest and attorney's fees; and

    (c)    such other and further relief as this Court deems just and equitable.

**Wherefore**, it is respectfully requested that this Court award the relief requested in paragraphs 40, 41, 46, 52 and 53.

May 1, 2008

_____
Peter G. Eikenberry (7257)
74 Trinity Place, Suite 1609
New York, New York 10006
(212) 385-1050

Michael A. Faillace

Michael Faillace & Associates, PC
110 East 59th Street, 32nd Floor
New York, New York 10022
(212) 317-1200

*Attorneys for plaintiffs*