UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GUILLERMO GONZALES, individually and on behalf
of all others similarly situated,

                      Plaintiff,

                                                                        FLSA COLLECTIVE
                                                                      ACTION

        -against-                                                Rule 23 Class Action


SPICE PLACE, INC., SPICE AVE., INC.,
BANGKOK PALACE II, INC., SPICE CITY, INC.,    ECF case
SPICE WEST, INC., KITLEN MANAGEMENT, INC.,
KITTIGRON LIRTPANARUK, and
YONGYUT LIMLEARTVATE                               08-civ-3887 (RWS)

                      Defendants.
-------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**Preliminary statement**

Guilermo Gonzales's complaint against his former employer, the defendant corporate owners and their individual principals (collectively the "Spice group") which operate restaurants in New York City (the "Spice restaurants") alleges that the defendant corporations had, in addition to common ownership and management, common compensation policies that resulted in Gonzales and other restaurant "bussers" and waiters being underpaid in violation of the Fair Labor Standard Act (FLSA) and New York Labor Law (NYLL). The previously filed Castro action seeks collective action and class relief against the same defendants, but on behalf of delivery persons employed by the Spice group.

**A. The Castro action and the Gonzales action**

Fourteen former employees of the Spice group filed an action captioned *Castro, et al. v. Spice Place, Inc., et al.*, index no. 07-cv-4657 (the "Castro action") in the Southern District of New York on June 1, 2007, asserting claims for unpaid wages under the FLSA and NYLL and for failure to pay spread-of-hours wages under NYLL. (Ex. B)[1]. On May 22, 2008, the plaintiffs filed a motion to certify class and collective action claims in the Castro action. If class and collective action certification is granted in the Castro action, the class will be limited to delivery persons employed by defendants. (*See* Ex. 1). Guillermo Gonzales opted in to the Castro action by filing a consent form on October 12, 2007. (Ex. C). However, unlike the named plaintiffs in the Castro action, Gonzales had been employed by the Spice group as a waiter and busser. (Ex. A, ¶¶8-10; Ex. B, ¶¶10-23)

---

[1] Exhibits A through C are attached to the affirmation of Robert D. Lipman in support of defendants' motion to dismiss, dated July 28, 2008. Exhibits 1 and 2 are attached to the answering affidavit of Peter G. Eikenberry, sworn to on August 8, 2008.

Although both Gonzales and the delivery persons in the Castro action similarly assert FLSA and NYLL claims against defendants, the treatment of Gonzales (and other waiters and bussers) by defendants was different enough from defendants' treatment of delivery persons to warrant a separate class and collective action case on behalf of waiters and bussers. Thus, on April 24, 2008, plaintiff filed this action, asserting FLSA and NYLL claims on behalf of Gonzales and collective and class action claims on behalf of other "wait staff and bussers" employed by defendants. (Ex. A, ¶6).

**B. The 75 Second Avenue restaurant location**

Gonzales was employed by the Spice group from approximately November 2001 through December 2007—at a 60 University Place location for the first three years and at a 75 Second Avenue location thereafter. (Ex. A, ¶¶ 8-10). The complaints in both the Castro action and this action do not name the individual restaurants as defendants, but rather name the corporations and individuals who, upon information and belief, own and operate the Spice restaurants. (Ex. A ¶¶ 3-5; Ex. B ¶¶ 24-36).

According to the New York Department of State website, a now inactive corporation "Kitlen, Inc." was located at 75 Second Avenue. (Ex. 2) Defendant Kittigron Lirtpanaruk ("Lirtpanaruk") is listed as both the Chairman / CEO and Principal Executive Officer of Kitlen, Inc. (Ex. 2). Discovery will reveal whether Lirtpanaruk, other individuals or a corporation owns the Spice restaurant at the Second Avenue location.

**C. The members of the Spice group's common compensation policies**

As alleged in the complaint, the Spice restaurants were managed and operated jointly by the defendant corporations and individual defendants. (Ex. A, ¶¶ 3-5). The

complaint states that there were eight other bussers and wait staff at the University Place location and five other bussers and wait staff at the 75 Second Avenue location who were subject to the same compensation policies as Gonzales, and alleges upon information and belief that all other bussers and wait staff employed by the Spice group were subject to these same compensation policies. (Ex. A, ¶¶ 33-35). The Spice group's common compensation policies included the following:

-The Spice group required all bussers and waiters to perform additional tasks—including stocking items in the storage rooms, cleaning the restaurants, setting up the seating areas, and carrying supplies from delivery trucks to the storage areas. (Ex. A, ¶14).

-Management of the Spice group pooled together tips received by all waiters at each restaurant, and then paid each busser and waiter approximately $40 per day, regardless of the amount of tips actually left by patrons. (Ex. A, ¶¶16-18).

-The Spice group recorded the arrival and departure times of bussers and waiters with punch cards from 2001 to 2004, and with a computer system (the "computer time system") that used swipe cards and identification numbers after 2004. (Ex. A, ¶¶20-21).

-Before the Spice group began using the computer time system in 2004, bussers and waiters received no salary or other compensation from the Spice group, and received compensation only in the form of tips from restaurant patrons. (Ex. A, ¶15).

-After the Spice group began using the computer time system in 2004, bussers and waiters were given a paycheck each week, but were required to cash the paychecks and return the resulting cash to the restaurants, and the Spice group withheld tips until the bussers and waiters returned the cash. (Ex. A, ¶¶22-23).

-Bussers and waiters were required to "punch out" using the punch cards or computer time system hours before they actually stopped working each day, so that the time records would incorrectly indicate that each employee had worked no more than 40 hours in a given week. (Ex. A, ¶¶24-25).

-When bussers and waiters arrived to work later, the Spice group billed them $5 for every 15 minutes passed their scheduled start time, and withheld this amount from their daily tips. (Ex. A, ¶30).

-The Spice group required bussers and waiters to purchase uniform shirts and pants with their own money for use in their employment. (Ex. A, ¶31).

**Gonzales's status in the Castro action**

It is uncertain whether Gonzales is a party to the Castro action. Gonzales was not a named plaintiff in the Castro action, and it has not yet been certified as a collective action. Gonzales merely filed a consent to sue form in the action in October 2007. Gonzales did not work as a delivery person for the Spice group, and, therefore, he will not be included in the Castro collective action if it is certified. If the Court determines that Gonzales is a party to that action, he will stipulate to dismiss his claims from the Castro action. If defendants will not stipulate to dismiss his claims in the Castro action without prejudice, we will seek the Court's permission to do so pursuant to Fed. R. Civ. P. 41(a)(2).

**The argument**

### POINT I

**SINCE PLAINTIFF ALLEGES THAT DEFENDANTS OPERATED AS AN ENTERPRISE OR JOINT EMPLOYER UNDER THE FLSA AND NYLL, HIS CLAIMS SHOULD NOT BE DISMISSED FOR FAILURE TO STATE A CLAIM OR FAILURE TO JOIN A NECESSARY PARTY**

Since plaintiff alleges that members of the Spice group operated as a single enterprise or joint employer with common ownership, management and compensation policies, his claims should not be dismissed for failure to state a claim or failure to join a necessary or indispensable party. *See Bowrin v. Catholic Guardian Soc'y.*, 417

F.Supp.2d 449, 458 (S.D.N.Y. 2006); 29 U.S.C. § 203(r)(1); Fed. R. Civ. P. 12(b); Fed. R. Civ. P. 19.

Separate business entities may be considered one "enterprise" for purposes of the FLSA and New York Labor Law if the entities "1) engage in 'related activities,' 2) performed through 'unified operation' or 'common control,' 3) for a common business purpose." *Bowrin v. Catholic Guardian Soc'y*, 417 F.Supp.2d 449, 458 (S.D.N.Y. 2006); 29 U.S.C. § 203(r)(1). Several businesses may be part of the same enterprise even if its activities "'are performed by more than one person, or in more than one establishment, or by more than one corporate or other organizational unit.'" *Id.* (quoting 29 C.F.R. 779.202).

"Related activities" include the activities "of individual retail or service stores in a chain" 29 C.F.R. 779.206. "Unified operation" may exist when separate entities share employees, employ common managers, and have common payroll operations. *See United States v. Stanley*, 416 F.2d 317, 318-319 (2nd Cir 1969); *Donovan v. Beverage Express, Inc.*, 630 F.Supp. 402, 404 (N.D. Ohio 1985); *Mentor v. Imperial Parking*, 246 F.R.D. 178 at 181 (S.D.N.Y. 2007).

Gonzales's complaint alleges that the members of Spice group jointly operated and managed the restaurants under their control, and sets forth various compensation policies that were commonly used by all of the Spice restaurants. The restaurant located at 75 Second Avenue, which was the address with a corporation no longer active that listed defendant Kittigron Lirtpanaruk as its Chairman / CEO and Principal Executive Officer, is operated by this common enterprise. (Ex. A, ¶10, Ex. 2). Therefore, the Gonzales complaint does not fail to state a claim or fail to join a necessary party.

## POINT II

### SINCE GONZALES FILED HIS CONSENT FORM IN THE CASTRO ACTION IN OCTOBER 2007, TOLLING THE STATUTE OF LIMITATIONS, HE IS ENTITLED TO FLSA DAMAGES FOR HIS PERIOD OF EMPLOYMENT SUBSEQUENT TO OCTOBER 2004

Since the statute of limitations for Gonzales's FLSA claims was tolled when he filed his consent form in the Castro action on October 12, 2007, his FLSA claims in the instant action were "commenced" on October 12, 2007, and he is entitled to FLSA damages for the period of his employment at Spice subsequent to October 12, 2004. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974); 29 U.S.C. §255; 29 U.S.C. §256.

In *American Pipe*, the Court held that held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). The court recognized that the tolling rule is "in no way inconsistent with the functional operation of a statute of limitations," which are intended to put defendants on notice of claims against them within a reasonable time and to "prevent plaintiffs from sleeping on their rights." *Id*. at 554-556

In *Crown v. Parker*, the Court clarified that tolling under *American Pipe* applies to putative class members who later file separate actions, not just to individuals seeking to intervene in the original case after denial of class certification. *Crown v. Parker*, 462 U.S. 345, 350 (1983) ("filing of a class action tolls the statute of limitations 'as to all asserted members of the class,' not just as to intervenors.") The statute of limitations is tolled under *American Pipe* even if the second action is filed before a class certification

determination is made in the original case. *In re: Worldcom Securities Litigation*, 496 F.3d 245, 256 (2nd Cir. 2007).

Under the FLSA, an action is commenced for statute of limitations purposes with respect to an individual claimant on the date when the individual files a consent form. 29 U.S.C. §256(b). Under the principles of *American Pipe* and its progeny, the applicable commencement date for Gonzales claims in the instant action is October 12, 2007, the date when Gonzales filed his consent form in the Castro action, giving defendants notice of his FLSA and NYLL claims against them. Thus, under the three-year statute of limitations of willful FLSA violations, Gonzales is entitled to FLSA damages for the period of his employment subsequent to October 12, 2004. 29 U.S.C. §255.

## Conclusion

Plaintiffs respectfully request that this Court deny defendants' motion to dismiss and order such further relief as shall be just and proper, including attorney's fees.

August 8, 2008

Michael A. Faillace
MICHAEL FAILLACE & ASSOCIATES, P.C.
110 East 59th Street, 32nd Floor
New York, New York 10022
Telephone: (212) 317-1200

*Attorneys for plaintiffs*

Robert C. Ruhlin
John A. Karol
*Of Counsel*

Peter G. Eikenberry (7257)
74 Trinity Place, Suite 1609
New York, NY 10006
Telephone: (212) 385-1050